OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (hereinafter the Grievance Committee) served the respondent with a petition dated December 3, 2010, containing 26 charges of professional misconduct. After a hearing on January 13, 2012, the Special Referee issued a report which sustained all the charges. The Grievance Committee now moves to confirm the Special Referee’s report and impose such discipline upon the respondent as the Court deems just and proper. The respondent has submitted papers in opposition to the motion, wherein he asks the Court to disaffirm the report and grant him a new hearing. He claims that on the day of the hearing, his request for an adjournment was denied and, consequently, he was deprived of an opportunity to present character and other medical evidence. The respondent has attached to his opposition papers an affidavit from a former client attesting to the respondent’s general character.
*96 Charge 1 alleges that the respondent breached his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). Between in or about August 2007 and in or about May 2010, the respondent maintained an escrow account entitled “Law Office of Gerard M. Tanella P.C. IOLA Escrow Account” at JPMorgan Chase Bank. Funds entrusted to the respondent as a fiduciary were maintained in the account. On or about October 23, 2008, check No. 1160, drawn against the account in the amount of $10,679.79, was returned for insufficient funds.
Charge 2 alleges that the respondent failed to maintain required bookkeeping records, in violation of Code of Professional Responsibility DR 9-102 (d) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [d]; 1200.3 [a] [7]). The respondent failed to maintain a ledger book or similar record of deposits into and withdrawals from his escrow account, as required.
Charge 3 alleges that the respondent failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (e) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [e]; 1200.3 [a] [7]). Between in or about August 2007 and in or about May 2010, the respondent maintained a separate operating account entitled “Law Office of Gerard M. Tanella P.C. Operating Account” at JPMorgan Chase Bank. During such period, funds were routinely transferred by wire from the respondent’s operating account to his escrow account.
Charge 4 alleges that the respondent failed to safeguard funds entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (b) and DR 1-102 (a) (7) (22 NYCRR 1200.46 [b]; 1200.3 [a] [7]). Funds entrusted to the respondent as a fiduciary were required to be deposited into his escrow account. However, fiduciary funds were routinely deposited into the respondent’s operating account.
Charge 5 alleges that the respondent allowed one or more nonattorneys to exercise control over his law practice, in violation of Code of Professional Responsibility DR 1-104 (c) and DR 1-102 (a) (7) (22 NYCRR 1200.5 [c]; 1200.3 [a] [7]). Charge 7 alleges that the respondent shared legal fees with one or more nonattorneys, in violation of Code of Professional Responsibility DR 3-102 (a) and DR 102 (a) (7) (22 NYCRR 1200.17 [a]; 1200.3 [a] [7]). In or about August 2007, the respondent entered into an agreement with Professional Billing Services, a business owned by nonattorney Inna Lyubronetskaya and/or Gregory Spektor (a nonattorney until his admission to the Bar on *97 November 14, 2007). Spektor assumed unsupervised control over the day-to-day operation of the respondent’s law practice. Lyubronetskaya assumed unsupervised control over the respondent’s escrow account, as well as his operating account, including, but not limited to, control of all books and records. Lyubronetskaya issued checks on both accounts, to which she affixed a stamp of the respondent’s signature. The respondent became a salaried employee of his law practice. At the direction of Spektor and/or Lyubronetskaya, the respondent conducted no-fault litigation to recover payments on behalf of medical providers whose patients ostensibly had been involved in automobile accidents. The attorney’s fees generated by that litigation were deposited into the respondent’s operating account. Between in or about August 2007 and November 13, 2007, Lyubronetskaya issued checks against those attorney’s fees to the order of Spektor. Between in or about August 2007 and in or about May 2010, Lyubronetskaya issued checks against those attorney’s fees to herself and/or Professional Billing Services.
Charge 6 alleges that the respondent gave false and/or misleading testimony to the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). On April 15, 2010, appearing at the Grievance Committee’s office for an examination under oath, the respondent testified falsely that Lyubronetskaya was a “friend” who assisted him “at his request” with escrow account bookkeeping services, while also preparing checks “for his signature” on his escrow account. The respondent also testified falsely that he “personally reviewed” and “signed” the escrow account checks prepared for him by Lyubronetskaya. Moreover, the respondent testified falsely that Lyubronetskaya did not write checks on his operating account.
Charge 8 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). In or about October 2008, the respondent advised Nelson Segarra and/or his mother, Miriam Velez, that Allstate Insurance (hereinafter Allstate) had offered $100,000, plus $40,000 in medical expenses, to settle a personal injury action purportedly filed by the respondent on Segarra’s behalf. However, no personal injury action had been filed and no settlement offer had been made. Further, on or about February 3, 2009, the respondent provided Segarra and/or *98 Velez with a purported decision and order of the Civil Court, New York County, which ostensibly directed Allstate to pay the “agreed settlement” within 10 days. The respondent fabricated the decision and order with the intention of misleading Segarra and/or Velez. On or about February 13, 2009, the respondent prepared and sent one or more emails to Velez indicating that the receipt of “settlement draft No. 120356164” was “imminent.” The foregoing representation was knowingly false and made with the intention of misleading Segarra and/or Velez.
Charges 9 and 10 allege that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). The respondent was retained by Eddison Bridgeman to represent him in connection with a claim against Lexus of Rockville Centre. Approximately one year later, the respondent advised Bridgeman that his claim had “settled out of court” for $40,000. In fact, the respondent never engaged in settlement negotiations and/or received a settlement offer on Bridgeman’s behalf. Nonetheless, the respondent wrote one or more checks to Bridgeman, ostensibly representing Bridgeman’s share of the purported settlement. Said check(s) was/were returned for insufficient funds. The respondent knew or should have known when he issued the checks that there were insufficient funds on deposit for the check(s) to clear.
Charge 11 alleges that the respondent undertook legal representation in a matter that he knew or should have known he was not competent to handle, in violation of Code of Professional Responsibility DR 6-101 (a) (1) and DR 1-102 (a) (7) (22 NYCRR 1200.30 [a] [1]; 1200.3 [a] [7]). In or about February 2007, the respondent was retained by Gertrude Friedman to represent her in a medical malpractice action against Sammy Lasheen. The respondent did not have the experience to handle such a case and failed to associate himself with a lawyer who was competent to handle it.
Charge 12 alleges that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (a) (3) and DR 1-102 (a) (7) (22 NYCRR 1200.30 [a] [3]; 1200.3 [a] [7]). The respondent failed to take any action on Friedman’s behalf.
Charge 13 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, *99 which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). In or about October 2008, the respondent falsely represented to Friedman that her medical malpractice claim had resulted in a settlement offer of $260,000. However, the respondent never engaged in settlement negotiations and/or received a settlement offer on Friedman’s behalf. The respondent had Friedman execute a general release. Thereafter, the respondent altered a bank document to reflect a deposit of $260,000, and, in or about February 2009, issued two checks to his client, totaling $172,000, from his business account, entitled “Gerald [sic] M. Tanella Attorney at Law EC. Account” at JPMorgan Chase Bank. The general release, altered bank document, and the two checks were all intended to mislead Friedman about the settlement of her claim.
Charge 14 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). The respondent knew that there were insufficient funds on deposit in his business account to cover the two checks he prepared for, and tendered to, Friedman from this account.
Charge 15 alleges that the respondent submitted false and/or misleading written answers to the Grievance Committee, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). On or about May 8, 2009, Friedman filed a complaint with the Grievance Committee pertaining to the respondent’s representation. On or about June 22, 2009, the respondent submitted a written answer to the Grievance Committee in which he stated falsely that, after Friedman retained him, he personally contacted Lasheen and obtained the name of Lasheen’s insurance carrier, to wit, “Oxford Global Resources.” He stated falsely that he personally “began discussing settlement with the carrier,” and that the discussions “went on for several months” after which he “thought [he] had reached a settlement.” On or about December 9, 2009, the respondent submitted a verified supplemental answer to the Grievance Committee in which he reiterated that he personally communicated with Lasheen and that he personally engaged in settlement discussions with “Oxford’s legal counsel, Robert Brown, Esq.” In fact, the respondent never spoke to Lasheen, Oxford Global Resources is not an insurance carrier, and the re *100 spondent never engaged in any settlement discussions with Robert Brown and/or obtained a settlement on Friedman’s behalf.
Charge 16 alleges that the respondent gave false and/or misleading testimony to the Grievance Committee, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). On March 18, 2010, the respondent appeared at the Grievance Committee’s office for an examination under oath. The respondent testified falsely that “there came a time” when he “spoke directly to Dr. Lasheen,” who advised him that Oxford Global Resources insured him. In fact, the respondent never spoke to Lasheen, and Oxford Global Resources is not an insurance carrier.
Charge 17 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). From in or about 2002 through in or about 2005, Karen Yuabov was represented by Matthew Keenan in connection with a claim against Linda Medians for personal injuries allegedly sustained in an automobile accident. Following Keenan’s disbarment in May 2005, Yuabov was represented by the respondent’s former employer, Alan Rocoff, until his suspension from the practice of law in July 2006. Thereafter, the respondent became Yuabov’s attorney. No action was ever commenced on Yuabov’s behalf and there was no settlement with Merians’s insurer, Allstate. In fact, the claim was in a “no-pay status” because Allstate suspected fraud. Nonetheless, from July 23, 2008 through December 29, 2008, the respondent made payments to Yuabov exceeding $27,000 from his business account, with the intention of falsely conveying to Yuabov that his 2002 personal injury case had been settled.
Charge 18 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). In or about 2007, the respondent and/or Yuabov entered into an agreement with TriState-QuickCash.com (hereinafter TriState) to borrow funds in contemplation of a settlement in connection with Yuabov’s claim against Merians. On or about April 30, 2007, TriState loaned Yuabov the sum of $3,500, upon the respondent’s pledge to *101 “observe all terms and agree to withhold and to pay over such sums from any settlement, judgment or verdict as may adequately protect TriState.” On or about October 7, 2008, TriState loaned Yuabov an additional sum of $4,000, premised on the foregoing pledge. In or about July 2009, the respondent represented to TriState that Yuabov’s claim against Merians had been settled when he knew or should have known that no action had ever been commenced on Yuabov’s behalf. Moreover, the respondent knew or should have known that Yuabov’s claim against Merians had been in a “no-pay status” since in or about 2003, inasmuch as Allstate suspected fraud.
Charge 19 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about July 2009, the respondent issued a check to TriState in the amount of $11,506, dated July 24, 2009, drawn on an account entitled “Gerard Tanella” at JP-Morgan Chase Bank. Contrary to the parties’ agreement, the check was improperly drawn on a personal account, rather than a law firm trust account. Moreover, the check was returned due to “non-sufficient funds.” The respondent knew or should have known that the balance on deposit in his personal account was insufficient to cover the check.
Charge 20 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about December 2009, the respondent issued a check to TriState in the amount of $12,570, dated December 17, 2009, drawn on his business account. Contrary to the parties’ agreement, the check was improperly drawn on a law firm business account, rather than a law firm trust account. The check was returned due to “Return Reason D Account Closed.” The respondent knew or should have known that the account was closed when he issued the check to TriState.
Charge 21 alleges that the respondent submitted false and/or misleading written answers to the Grievance Committee, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). On or about July 19, 2010, Simon Vituk, the principal of TriState, filed a complaint with the Grievance Committee regarding the respondent’s conduct in his representation of Yuabov. On or about August 19, 2010, the respon *102 dent submitted a written answer in which he stated that he had spoken with Laura Arnold, an adjuster with Allstate, with whom he “thought that he [had] reached an agreement to settle [Yuabov’s] claim.” In fact, Yuabov’s claim had been in a “no-pay status” from in or about 2003, inasmuch as Allstate suspected fraud.
Charge 22 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). Between on or about October 7, 2008 and on or about February 7, 2009, the respondent and/or Yuabov entered into an agreement with Peachtree Lending (hereinafter Peachtree) to borrow funds in contemplation of a settlement of Yuabov’s claim against Merians. However, no action was ever commenced on Yuabov’s behalf. Between January 6, 2009 and March 3, 2009, the respondent sent correspondence to Peachtree, falsely stating that Yuabov’s claim had settled for $35,000. Further, the respondent sent Peachtree a fabricated court order ostensibly directing the payment of $35,000 to Yuabov. In addition, the respondent also sent Peachtree letters purporting to be from Alex Nieves at Allstate, ostensibly attesting to the settlement of Yuabov’s claim. However, Nieves neither wrote or signed the letters, nor offered to settle Yuabov’s claim with the respondent and/or Yuabov.
Charge 23 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). On or about May 27, 2009, the respondent entered into an agreement with Empire Settlement Funding (hereinafter Empire), wherein, in exchange for Empire forwarding $25,000 to him, the respondent agreed to “sell and assign” to Empire an ownership interest in designated personal injury and/or medical malpractice claims. Among the claims listed were Karen Yuabov v Linda Merians and Gertrude Friedman v Oxford Global Resources and Dr. Sammy Lasheen. However, no action was ever commenced on behalf of Yuabov or Friedman. Moreover, neither claim was ever settled. Nonetheless, on or about November 16, 2009, the respondent falsely represented to Empire that Friedman’s claim had been settled and that he expected to receive $80,000 as and for his contingency fee.
Charge 24 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, *103 which adversely reflects on his fitness to practice law, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about December 2009, the respondent issued a check to Empire in the amount of $39,118.61 drawn from his business account. The check was dishonored. The respondent knew or should have known that he did not have funds on deposit in his business account to cover the check.
Charge 25 alleges that the respondent engaged in conduct prejudicial to the administration of justice, which adversely reflects on his fitness to practice law, in violation of rule 8.4 (d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about February 2010, Empire commenced a civil suit against the respondent in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, seeking treble damages. On or about April 6, 2010, Empire obtained a final default judgment against the respondent in the amount of $161,431.51. The respondent has failed to vacate and/or satisfy the judgment.
Charge 26 alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, and/or misrepresentation, which adversely reflects on his fitness to practice law, in violation of rule 8.4 (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about May 2010, the respondent issued a check to Empire dated May 14, 2010, in the amount of $69,000, drawn from his personal account. The check was dishonored. The respondent knew or should have known that he did not have funds on deposit in his personal account to cover the check.
Based on the uncontroverted evidence and the respondent’s admissions, the Special Referee properly sustained all the charges. Accordingly, the Grievance Committee’s motion to confirm the Special Referee’s report is granted.
In determining the appropriate measure of discipline to impose, it is significant to note the absence of any mitigating circumstances. In contrast, the aggravating factors in this case are numerous and substantial, e.g., complete abdication by the respondent of his fiduciary duties over client funds and his escrow account; serial neglect by the respondent of legal matters entrusted to him; giving of false testimony to the Grievance Committee; deceiving his clients into believing claims had settled when the respondent had not even commenced actions on their behalf; deceiving third parties into believing the settlement status of claims in order to procure funds; fabrication of court orders by the respondent; issuance of checks which the re *104 spondent knew would be returned for insufficient funds; financial injury caused to clients and third parties as a result of the respondent’s misconduct; and participation by the respondent in a criminal enterprise and the failure to extricate himself from such enterprise whose objective was to defraud insurance companies. The severe and gross violations committed by the respondent fully merit the Special Referee’s conclusion that the respondent is “morally corrupt and intellectually bankrupt.”
We reject the respondent’s request for a new hearing, as the record reveals that both he and his prior counsel requested repeated adjournments and extensions of time both to answer the petition and hold the hearing. His request for another adjournment on the day of the hearing was properly denied by the Special Referee. The respondent’s proffered evidence, along with his request for an opportunity to submit certain medical evidence, is similarly rejected.
Under the totality of circumstances, the respondent is disbarred, effective immediately.
Eng, EJ., Mastro, Rivera, Skelos and Dillon, JJ., concur. Ordered that the petitioner’s motion to confirm the Special Referee’s report is granted; and it is further,
Ordered that the respondent, Gerard M. Tanella, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
Ordered that the respondent, Gerard M. Tanella, shall continue to comply with this Court’s rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,
Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Gerard M. Tanella, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Gerard M. Tanella, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).